UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

Grand Jury N-15-1  FILED

| | |
|---|---|
| UNITED STATES OF AMERICA | Criminal No. 3:16CR 65 RNC |
| v. | VIOLATIONS: |
| JOSEPH A. CASTELLANO | 15 U.S.C. § 78j(b) and 78ff (Securities Fraud)<br>18 U.S.C. § 1341 (Mail Fraud)<br>18 U.S.C. § 1343 (Wire fraud)<br>18 U.S.C. § 1957 (Money Laundering)<br>18 U.S.C. § 2 (Aiding and Abetting)<br>18 U.S.C. § 981(a)(1)(C) (Forfeiture)<br>28 U.S.C. § 2461(c) (Forfeiture) |

## INDICTMENT

The Grand Jury charges:

### COUNTS ONE THROUGH TEN
Wire Fraud
(18 U.S.C. §§ 1343 and 2)

At all times relevant to this Indictment:

1.  Defendant JOSEPH A. CASTELLANO ("CASTELLANO") was a resident of Wallingford, Connecticut.

2.  CASTELLANO was the owner and manager of various business entities that he operated out of his offices located on South Elm Street in Wallingford, Connecticut, including Casbo Investments, Wallingford Investors Limited Partnership, AIM Realty Investors, and Castellano & Co., LLC.

3.  CASTELLANO operated as a tax accountant and engaged in the business of tax preparation and, in that capacity, CASTELLANO prepared federal and state tax returns for individuals and local businesses in Wallingford, Connecticut, and the surrounding communities.

4.  In connection with his tax preparation business, CASTELLANO established a base

1

of clients to which he offered financial services in addition to preparing their taxes, including offering them purported investment opportunities and offering to purportedly invest their funds for them so as to yield a positive return of interest on their money.

5. CASTELLANO operated and controlled bank accounts in his own name and in the names of the above-referenced entities at numerous financial institutions which were insured by the Federal Deposit Insurance Corporation ("FDIC") and which engaged in, and the activities of which affected, interstate and foreign commerce, including: Wells Fargo Bank, NA (formerly known as Wachovia Bank); People's United Bank; Liberty Bank; and TD Bank N.A.

### The Victim-Investors

6. As described in more detail below, CASTELLANO, based on materially false and fraudulent pretenses, representations, and promises, induced numerous victim-investors to provide him funds to be invested and to provide him authority over their money including by falsely representing that he would obtain for them annual rates of return on their money of between approximately six percent (6%) and approximately eight percent (8%) or more by, among other ways, taking their money and lending it to other clients of his who would pay the promised rates of return.

7. Certain victim-investors who provided CASTELLANO funds based on the materially false representation that he would return to them their full principal as well as the promised interest payments are referred to in this Indictment by their initials as follows: P.A., P.B., R.C., M.C., J.G., V.G., F.P., R.W., and a family limited partnership referred to herein as A.F.L.P.

### The Scheme to Defraud

8. From in or about July 2007 and continuing until the date of this Indictment, in the District of Connecticut and elsewhere, CASTELLANO knowingly, willfully, and with intent to

2

defraud, devised and intended to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and for the purpose of executing such scheme did knowingly transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, certain writings, signs, signals and sounds.

### The Purpose of the Scheme

9. The purpose of the scheme to defraud was for CASTELLANO to enrich himself, his various entities, and certain associates, by defrauding victims out of money and property by means of materially false and fraudulent pretenses, representations, and promises.

### The Manner and Means of the Scheme

The manner and means by which CASTELLANO sought to accomplish and did accomplish the scheme included the following:

10. It was a part of the scheme to defraud that CASTELLANO falsely represented to victim-investors that he had clients who were in need of capital to fund their various projects, such as for their businesses or real estate development projects, but were unable to secure funding from traditional sources such as financial institutions.

11. It was further part of the scheme to defraud that CASTELLANO falsely represented to victim-investors over the telephone and in person that he had access to investment opportunities and he would obtain for them a consistent rate of return of between approximately six percent (6%) and approximately eight percent (8%) annually on their money by, among other ways, taking their money and placing it with, or lending it to, one or more of his other clients.

12. It was a further part of the scheme to defraud that CASTELLANO obtained money from victim-investors, including investors in Connecticut, by falsely and fraudulently

3

representing, among other things, that:

   A. he had clients who were in need of capital to fund their various projects and who were willing to pay between approximately six percent (6%) and eight percent (8%) annually;

   B. their money would be invested with and/or lent to these other clients of his;

   C. the money would be used for real estate and/or real estate development;

   D. their money would be safe and secure, and their principal would be returned to them upon demand; and

   E. the victim-investors would be paid interest on their money generated from the real estate projects and the loans to other clients;

when in truth and in fact, and as CASTELLANO well knew, there were no actual investments or investment opportunities paying between 6% and 8%, the money was not invested with or lent to other clients of CASTELLANO, nor was it invested in or used for real estate or real estate development projects.

13. It was further part of the scheme to defraud that after prospective investors expressed an interest in providing him funds to obtain the promised rates of return on their money, CASTELLANO sought to create the appearance of legitimacy by preparing and executing official-looking documents and investment contracts termed "Demand Notes" that he executed on behalf of Casbo Investments as "Manager." These Demand Notes contained various provisions including, among others, a promise to return the principal amount together with interest thereon and the representation that demand could be made for full repayment of the Note plus all accrued interest at any time. The Demand Notes were dated and signed on behalf of Casbo Investments by CASTELLANO, as manager of Casbo Investments.

14. It was further part of the scheme to defraud that CASTELLANO sought to create the appearance of legitimacy by having the various investment contracts termed "Demand Notes"

signed by another individual acting as a witness in order to make the Demand Notes appear to be actual investment contracts.

15. It was further part of the scheme to defraud that CASTELLANO represented to certain other victim-investors over the telephone and in person that he would place their money into self-directed Individual Retirement Accounts (IRAs) and their funds would earn a positive rate of return in the self-directed IRAs.

16. It was further part of the scheme to defraud that CASTELLANO caused certain victim-investors to sign various documents, including Account Transfer Forms and Application forms, to transfer their IRA funds to Equity Institutional, a servicing company for Equity Trust. Equity Trust provides alternative investment custodial services for, among other things, IRAs.

17. It was further part of the scheme to defraud that CASTELLANO caused investor-victims to execute certain documents including Private Debt Direction of Investment ("DOI") documents in which CASTELLANO filled in his own name as a interested party and as representative and entered bank account information for Casbo Investments and sent the documents by facsimile to Equity Institutional, giving himself authority over the victim-investors' funds as an interested party and representative.

18. It was further part of the scheme to defraud that CASTELLANO executed "Promissory Notes" and sent those documents together with the other documents including the DOI documents by facsimile to Equity Institutional and thus caused Equity Trust to withdraw the victim-investors' funds from their Equity Trust IRA accounts and send the funds to the Casbo Investments bank account that he controlled.

19. It was further part of the scheme to defraud that CASTELLANO caused certain victim-investors to move their funds from an annuity account to an AIM Realty Investors account

by falsely representing that they would be investing in AIM Realty Investors, when in truth and in fact, CASTELLANO diverted the funds for his own use and benefit, including moving the money to Casbo Investments bank accounts and making payments to other victim-investors that were falsely represented to be "interest" payments.

20. It was further part of the scheme to defraud that CASTELLANO caused more than 10 victim-investors to provide him and Casbo Investments more than $1.5 million based on false and fraudulent pretenses.

21. It was further part of the scheme to defraud that CASTELLANO failed to invest the money in real estate projects or lend the money to other clients as represented, and instead used the investors' funds that were sent to the Casbo Investments bank accounts for his own personal benefit, including to pay personal expenses such as credit card bills, paying business expenses of his CPA business, and making bogus "interest payments" to other victim-investors.

22. It was further part of the scheme to defraud that CASTELLANO falsely represented to the victim-investors that he was achieving a positive return on their funds, whereas in truth and in fact, he was not achieving the promised returns but instead was using other victim-investors' principal funds to create the false appearance that their funds were actually earning interest, by making periodic payments in amounts calculated to replicate the promised returns.

23. It was further part of the scheme to defraud that in order to prevent and forestall discovery of the scheme, CASTELLANO made materially false and fraudulent statements to victim-investors about the various delays in the purported interest payments. For example, he told the victim-investors that he was waiting for the clients to whom he had purportedly lent their

money to pay him, so he could pay the victim-investors, whereas in truth and in fact, he had not lent the money to other clients, but had used it himself.

24. On or about the dates set forth in each count below, in the District of Connecticut and elsewhere, for the purpose of executing and attempting to execute this scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, CASTELLANO did knowingly transmit, and cause to be transmitted, by means of wire communication in interstate and foreign commerce, certain writings, signs, signals and sounds, each wiring as set forth below constituting a separate count of this Indictment:

| Count | Date | Description of Use of Interstate Wires and Wire Communication |
|---|---|---|
| 1 | 2/4/13 | Facsimile from Castellano & Co., LLC in Connecticut from facsimile number (203) 284-3747 to John Hancock Annuity Department in Boston, Massachusetts at (617) 663-3160, including Withdrawal Request Form regarding victim A.F.L.P. |
| 2 | 2/8/13 | Wire transfer of $100,343.97 in funds from John Hancock Annuity Service Center from outside Connecticut to Wells Fargo Bank for the account in the name of A.F.L.P., ref: Crown Banking, Bank Connecticut (00221). |
| 3 | 1/21/14 | Facsimile from Castellano & Co., LLC in Connecticut from facsimile number (203) 284-3747 to Equity Institutional in Westlake, Ohio, including Account Transfer Form and Application for victim R.C. |
| 4 | 2/16/14 | Facsimile from Castellano & Co., LLC in Connecticut from facsimile number (203) 284-3747 to Equity Institutional in Westlake, Ohio, including paperwork for a private DOI (direction of investment) and a Promissory Note for $330,000 regarding victim R.C. |
| 5 | 2/18/14 | Wire transfer of $330,000 in funds from Equity Trust Company, Westlake, Ohio, via Citibank California, FSB to Liberty Bank in Connecticut for credit to Casbo Investments account ending in -1997. |
| 6 | 3/11/14 | E-mail from CASTELLANO at the e-mail address: joe_cast_57@yahoo.com from Connecticut to victim-investor R.W. at R.W.'s e-mail address ending in "…444@aol.com" in New York with the subject "Interest" and stating in part: "The form you are looking for is Form 1099-Int. I don't issue those forms to the interest recipients or the IRS…." |

7

| Count | Date | Description of Use of Interstate Wires and Wire Communication |
|---|---|---|
| 7 | 8/12/14 | Facsimile from Castellano & Co., LLC in Connecticut from facsimile number (203) 284-3747 to Equity Institutional in Westlake, Ohio, including paperwork for a private DOI (direction of investment) and a Promissory Note for $80,000 regarding victim P.A. |
| 8 | 8/14/14 | Wire transfer of $80,000 funds from Equity Trust Company, Westlake, Ohio, from Citibank California, FSB to Liberty Bank in Connecticut for credit to Casbo Investments account ending in -1997. |
| 9 | 9/25/14 | Facsimile from Castellano & Co., LLC in Connecticut from facsimile number (203) 284-3747 to Equity Trust in Westlake, Ohio, including paperwork for a private DOI (direction of investment) and a Promissory Note for $278,000 regarding victim P.A. |
| 10 | 9/26/14 | Wire transfer of $278,000 funds from Equity Trust Company, Westlake, Ohio, from Citibank California, FSB to Liberty Bank in Connecticut, for credit to Casbo Investments acct ending in -1997. |

All in violation of Title 18, United States Code, Sections 1343 and 2.

## COUNT ELEVEN
Mail Fraud
(18 U.S.C. §§ 1341 and 2)

25. Paragraphs 1 through 7 and paragraphs 9 through 23 are realleged as describing the scheme and artifice to defraud.

26. From in or about July 2007 and continuing until the date of this Indictment, in the District of Connecticut and elsewhere, Defendant CASTELLANO knowingly, willfully, and with intent to defraud, devised and intended to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, which scheme is set forth above, and for the purpose of executing such scheme did knowingly and willfully cause certain items to be delivered by United States Mail and by private commercial interstate carrier according to the directions thereon.

8

27. It was part of scheme to defraud that CASTELLANO falsely and fraudulently represented to victim-investors, including victim-investors P.B. and D.B., that he would use their money to lend it to other individuals who could not qualify for conventional loans.

28. It was further part of the scheme to defraud that CASTELLANO caused victim-investors, including victim-investors P.B. and D.B., to execute Individual Retirement Custodial Account Agreements, including causing P.B. and D.B. to execute a form with Sterling Trust (now known as Equity Trust).

29. It was further part of the scheme to defraud that CASTELLANO executed a Subscription Agreement with victim-investor P.B. in which he purportedly sold to her 3200 units of Wallingford Investors Limited Partnership in exchange for her retirement funds of $320,000 and falsely represented that those funds would be invested.

30. It was further part of the scheme to defraud that CASTELLANO caused Sterling Trust to wire victim-investor P.B.'s $320,000 to a business checking account that CASTELLANO controlled at TD Bank N.A., account ending in -1475.

31. It was further part of the scheme to defraud that CASTELLANO wrote checks to himself, to his business, and to Casbo Investments, from the retirement funds of victim-investor P.B., without the knowledge or approval of victim-investor P.B. and failed to invest or lend the money as he had represented, but instead spent the money on, among other things, his personal and business expenses, yet continued to represent to P.B. that the money was secure.

32. It was further part of the scheme to defraud and to prevent and forestall discovery of the fact that victim-investor P.B.'s money had been removed from the account and not invested as promised, that CASTELLANO caused Equity Trust (formerly known as Sterling Trust) to continue to send quarterly statements to victim-investor P.B., that continued to reflect a principal

value of $320,000, whereas in truth and in fact, the money had been spent by CASTELLANO and CASTELLANO had insufficient funds to repay the Promissory Note.

33. On or about September 30, 2015, in the District of Connecticut and elsewhere, for the purpose of executing and attempting to execute the scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises as described above, CASTELLANO did knowingly and willfully cause to be delivered by United States Mail and private commercial interstate carrier according to the directions thereon, a Quarterly Statement from Equity Trust in Westlake, Ohio, to victim-investor P.B. at P.B.'s address located in Wallingford, Connecticut.

All in violation of Title 18, United States Code, Sections 1341 and 2.

## COUNTS TWELVE THROUGH FIFTEEN
Securities Fraud
(15 U.S.C. §§ 78j(b) and 78ff; 17 C.F.R. § 240.10b-5 )
(18 U.S.C. § 2)

34. Paragraphs 1 through 7, 9 through 24, and 26 through 33 are realleged, and describe the employing of manipulative and deceptive devices and contrivances and the scheme and artifice to defraud.

35. As offered by CASTELLANO to the investor-victims, the "Demand Notes" and "Promissory Notes" identified above were securities within the meaning of the federal securities laws.

36. On or about the dates listed below, CASTELLANO unlawfully, willfully, and knowingly, by the use of the means and instrumentalities of interstate commerce and of the mails, directly and indirectly, would and did use and employ, in connection with the sale of securities, manipulative and deceptive devices and contrivances in contravention of Title 17, Code of Federal Regulations, Section 240.10b-5, by (a) employing devices, schemes, and artifices to defraud, (b)

10

making untrue statements of material facts and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, and (c) engaging in acts, practices, and courses of business which operated and would operate as a fraud upon investors as follows, each such instance as set forth below constituting a separate count of this Indictment:

| Count | Date | Sale of Security and Use of Interstate Commerce to Employ the Scheme and which Operated as a Fraud Upon Investors |
|---|---|---|
| 12 | 6/17/11 | Demand Note in the amount of $30,000 with a promise to pay victim-investor R.W. seven percent (7.0%) per annum signed by Joseph CASTELLANO on behalf of Casbo Investments as Manager, consummated by a deposit of $30,000 into the Casbo Investments bank account at Wells Fargo Bank ending in -6318, by way of the deposit of two checks, check #7109682 from First Republic Bank, New York, New York and check # 0401 25930 from Morgan Stanley Smith Barney, New York, New York. |
| 13 | 9/13/13 | Demand Note in the amount of $10,000 with a promise to pay victim-investor F.P. eight-and-a-half percent (8.5%) per annum signed by Joseph CASTELLANO on behalf of Casbo Investments as Manager, consummated by the negotiated check in the amount of $10,000, check #147 drawn from victim-investor F.P.'S account at Liberty Bank made out to Casbo Investments at CASTELLANO's direction and deposited into Liberty Bank account ending in -1997. |
| 14 | 4/3/14 | Demand Note in the amount of $50,000 with a promise to pay victim-investors J.G. and V.G. eight percent (8.0%) per annum signed by Joseph CASTELLANO on behalf of Casbo Investments as Manager, consummated by negotiated check in the amount of $50,000, check #1300 drawn from victim-investors J.G.'s and V.G.'s account at Webster Bank made out to an entity with the initials C.H.I. at CASTELLANO's direction. |
| 15 | 5/30/14 | Demand Note in the amount of $25,000 with a promise to pay victim-investors J.G. and V.G. eight percent (8.0%) per annum signed by Joseph CASTELLANO on behalf of Casbo Investments as Manager, consummated by negotiated check in the amount of $25,000, check #1319 drawn from victim-investors J.G.'s and V.G.'s account at Webster Bank made out to Casbo Investments at CASTELLANO's direction and deposited into Liberty Bank account ending in -1997. |

All in violation of Title 15, United States Code, Sections 78j(b) and 78ff; Title 17, Code of Federal Regulations, Section 240.10b-5; and Title 18, United States Code, Section 2.

## COUNTS SIXTEEN THROUGH EIGHTEEN
Money Laundering
(18 U.S.C. §§ 1957 and 2)

37.   Paragraphs 1 through 7, 9 through 24, and 26 through 35 are realleged.

38.   On or about the dates listed for each count below, CASTELLANO did knowingly engage and attempt to engage in monetary transactions in criminally derived property of a value greater than $10,000, all involving financial institutions which are engaged in, and the activities of which affect, interstate commerce, such property having been derived from specified unlawful activity, that is, wire fraud in violation of 18 U.S.C. § 1343 and mail fraud in violation of 18 U.S.C. § 1341, as follows:

| Count | Date | Funds Attributable To: | Monetary Transaction |
|---|---|---|---|
| 16 | 2/22/13 | Investment of victim-investor A.F.L.P. | Payment of $75,000 by check drawn from the from AIM Realty Investors bank account at People's United Bank ending in -0843 made payable to Casbo Investments, check number 1098. |
| 17 | 2/19/14 | Investment of victim-investor R.C. | Payment to Capital One in the amount of $15,510.77 via on-line banking from Casbo Investments Liberty Bank account ending in -1997 to Capital One. |
| 18 | 10/1/14 | Investment of victim-investor P.A. | Payment of $18,750 by check drawn from the Casbo Investments Liberty Bank account ending in -1997 made payable to A. Castellano, check number 1418. |

All in violation of Title 18, United States Code, Sections 1957 and 2.

## NOTICE OF FORFEITURE ALLEGATIONS
(Forfeiture Relating to Fraud Offenses)

39. Upon conviction of any of the wire fraud offenses alleged in Counts One through Ten, or the mail fraud offense alleged in Count Eleven, or any of the securities fraud offenses alleged in Counts Twelve through Fifteen, JOSEPH A. CASTELLANO shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), all right, title, and interest in any and all property, real or personal, which constitutes or is derived from proceeds traceable to violations of Title 18, United States Code, Sections 1341 (mail fraud) or 1343 (wire fraud) or Title 15, United States Code, Sections 78j(b) and 78ff; Title 17, Code of Federal Regulations, Section 240.10b-5 (securities fraud) including but not limited to the following:

Money Judgment:

A sum of money equal to the total amount of any property, real or personal, which constitutes or is derived from proceeds traceable to violations of 18 U.S.C. § 1341, § 1343 or Title 15, United States Code, Sections 78j(b) and 78ff; Title 17, Code of Federal Regulations, Section 240.10b-5.

40. If any of the above-described forfeitable property, as a result of any act or omission of the defendant, cannot be located upon the exercise of due diligence, has been transferred, sold to, or deposited with a third party, has been placed beyond the jurisdiction of the Court, has been substantially diminished in value, or has been commingled with other property which cannot be divided without difficulty, it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described above.

All in accordance with 18 U.S.C. § 981(a)(1) as incorporated by 28 U.S.C. § 2461(c), and Rule 32.2(a), Federal Rules of Criminal Procedure.

A TRUE BILL

/s/
FOREPERSON

UNITED STATES OF AMERICA

DEIRDRE M. DALY
UNITED STATES ATTORNEY

MICHAEL S. McGARRY
ASSISTANT UNITED STATES ATTORNEY